UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ASHLEY S.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:23-cv-5627-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

    Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for Supplemental Security Income benefits (SSI). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 4. Plaintiff challenges the Commissioner's decision finding her not disabled. Dkt. 8, Complaint.

    A. <u>Background</u>

    Plaintiff filed her application for SSI on June 24, 2021, alleging an onset date of July 14, 2010. AR 17, 177–93. The ALJ held a hearing on her application on April 28, 2022. AR 40–58. The ALJ issued a decision finding plaintiff not disabled on June 30, 2022. AR 14–39.

    The ALJ found plaintiff had the following severe impairments: seizure disorder; right shoulder abnormality; mild lumbar degenerative disease; panic disorder with

1

agoraphobia; and mood disorder with depression and anxiety. AR 20. The ALJ found plaintiff had the Residual Functional Capacity (RFC) to

> perform light work as defined in 20 CFR 416.967(b), with the following additional limitations: never climbing ladders, ropes or scaffolds; never crawling; frequent bilateral overhead reaching; occasional exposure to extreme cold and hazards such as unprotected heights and dangerous machinery; no exposure to stroboscopic lights; work limited to simple tasks; working away from the public; occasional interaction with co-workers; and occasional workplace changes.

AR 23. Based on hypotheticals the ALJ posed to the Vocational Expert (VE) at the hearing, the ALJ concluded plaintiff could perform the positions of collator operator, office helper, and routing clerk. AR 32.

### B. Discussion

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

**1. Plaintiff's Statements Regarding Subjective Symptoms**

Plaintiff argues the ALJ erred in addressing her subjective symptom testimony. Dkt. 15 at 8–11. The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).  In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Plaintiff alleged she has at least two to four "stare-out" seizures each month which cause soreness, cause headaches, and make it difficult for her to predictably be able to leave the house. *See* AR 47–48, 51, 226, 234. She also testified that she experienced a grand mal seizure about one year before the April 2022 hearing, and a previous grand mal seizure about eight months prior to the occurrence in April 2021. AR 48.

The ALJ found that plaintiff's testimony as to the debilitating effect of her seizures was inconsistent with the medical evidence because the medical evidence reflected that plaintiff's seizure symptoms resolved with seizure medication. AR 25–26.

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). Symptoms that can be controlled "are not disabling." *See Warre v. Comm'r*,

439 F.3d 1001, 1006 (9th Cir. 2006); see also Wellington v. Berryhill, 878 F.3d, 867, 876 (9th Cir. 2017).

The ALJ's finding was supported by substantial evidence. As the ALJ pointed out, Plaintiff did not have any tonic-clonic or refractory seizures after 2016 (AR 318, 320, 1060 (2016 medical record of seizure symptoms), 1070 (2015 medical record of seizure symptoms)), she reported in November 2020 that she had gone almost a year without seizures (AR 318), she reported a single 30-second seizure in April 2021 but indicated she had not had seizures in six months (AR 972), and she denied experiencing seizures in September and December 2020 (AR 301, 309).

Given the inconsistency between plaintiff's reported seizures and her testimony, as well as the infrequency of reported debilitating seizures, the ALJ's assessment of her statements about seizure symptoms was not erroneous. That the statements plaintiff made to providers about the frequency of her seizures were inconsistent with those she made to the ALJ was also itself an independently valid reason to discount her testimony. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ can consider "ordinary techniques of credibility evaluation" like prior inconsistent statements).

Plaintiff testified that her right shoulder impairment caused persistent pain and made it difficult to lift heavy objects. AR 51, 226, 231. The ALJ noted that cortisone injections had given plaintiff relief from pain caused by her right shoulder impairments. AR 26. Substantial evidence supported this finding. See AR 309 ("She received a subacromial cortisone injection on 8/3/20 and reports she had near 100% pain relief for several months."); 305–06 (noting "successful" injections). Although Plaintiff argues this "does not prove that she was not continuing to experience shoulder pain and limitations

4

related to that pain," Dkt. 15 at 9, the ALJ's finding nonetheless demonstrates that plaintiff's shoulder pain was relieved when she was given treatment, which is sufficient to find that it was not disabling.

Plaintiff testified that her impairments cause persistent pain in her lower back, which is exacerbated by lifting and carrying objects and cold weather. AR 50–51. The ALJ found these allegations were inconsistent with medical evidence in the record. AR 26–27. The ALJ acknowledged that some examination results showed plaintiff had cervical tenderness and pain with cervical range of motion. AR 26–27 (citing AR 1229). But the ALJ also noted that examinations were "primarily unremarkable and inconsistent with the claimant's subjective complaints of pain," supporting this finding by pointing to examinations finding normal strength, sensation in all extremities, and normal, pain-free cervical range of motion, as well as a "generally unremarkable" consultative examination. *Id.* (citing AR 319, 323, 967, 973).

Plaintiff challenges the ALJ's interpretation of the consultative exam. But plaintiff does not raise an argument challenging the ALJ's finding that the largely unremarkable and normal findings from examinations were inconsistent with plaintiff's allegations – which is sufficient to support the ALJ's determination. *See* Dkt. 15 at 9–10. The ALJ also noted imaging revealed that plaintiff's degenerative disc disease was only mild. AR 26–27. This was a valid consideration. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding that the mildness of degenerative disc disease was at least a factor that the ALJ could consider). Thus, the ALJ did not err in finding plaintiff's allegations of back pain were inconsistent with the medical evidence.

Plaintiff alleged several mental limitations, including persistent fatigue and drowsiness as a result of her seizure medications. AR 52–53, 233–34. The ALJ acknowledged that plaintiff experienced some mental limitations but determined that the medical evidence was inconsistent with the extent of plaintiff's allegations. *See* AR 27. The ALJ found that plaintiff experienced improvement and stability from therapy, pointing to indications that plaintiff reported experiencing positive mood, less anxiety, and, in contrast to her allegations of fatigue, more energy as a result. AR 23, 27–28 (citing 893–94, 900, 908–10); *see also Kitchen v. Kijakazi*, 82 F.4h 732, 739 (9th Cir. 2023) (finding "a gradual improvement in [claimant's] functioning" a specific, clear, and convincing reason where it undermined the testimony given).

The ALJ acknowledged there were some mental impairments noted in the record but found that the medical evidence was consistent with limitations to simple tasks, working in a setting that did not require contact with the public, occasional interaction with co-workers, and occasional workplace changes. AR 27–28. Plaintiff does not challenge either the ALJ's finding that plaintiff had improved – the record showed improvement that was inconsistent with her testimony – or the ALJ's finding that the RFC accounted for the mental limitations supported by the record. *See* Dkt. 15 at 9–10; *see also Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) ("It is not the court's role to 'second guess' an ALJ's reasonable interpretation of a claimant's testimony."). The ALJ did not err in considering plaintiff's mental symptom testimony.

The ALJ also discounted plaintiff's allegations because they were inconsistent with her activities of daily living. An ALJ may discount a claimant's testimony based on daily activities that contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

6

2007). Plaintiff asserts, without further explanation, that "none of [her] activities are inconsistent with her testimony." Dkt. 15 at 10. But Plaintiff alleged she spent her day doing few tasks and testified she had constant pain. *See* AR 51, 227.

The ALJ reasonably found this was inconsistent with evidence she spent time "doing all kinds of errands," and working on old cars, fixing trucks, going outside, helping family and friends with chores, dog walking, and watching her nieces and nephews. AR 29 (citing AR 300, 615, 880, 893–94, 900, 908, 910, 920–21, 925, 945, 989); *Smartt*, 53 F.4th at 499–500 (finding that cooking, cleaning, caring for child, and running errands were reasonably found inconsistent with allegations of constant pain and debilitating mental impairments).

Therefore, because the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's subjective symptom testimony, the Court need not consider the remaining reasons for discounting plaintiff's testimony given by the ALJ, as any error with respect to those reasons would be harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[W]here the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record," "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'").

**2. Medical Evidence**

Plaintiff challenges the ALJ's assessment of the medical opinions of Reginald Adkisson, PhD; Richard Henegan, MD; Ruth Dekker, ARNP; and state agency consultants Wayne Hurley, MD, and Robert Stuart, MD. *See* Dkt. 15 at 2–8.[1]

Under the March 2017 regulations, an ALJ need not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Under these regulations, the ALJ must explain how they considered the factors of supportability and consistency in evaluating the medical opinions. *Id.* § 404.1520c(a)–(b). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

A. Dr. Adkisson

Dr. Adkisson completed a mental evaluation of plaintiff in May 2021. AR 995–1000. He opined plaintiff had mild to moderate limitations in several functional areas. *See* AR 999. Relevant here, Dr. Adkisson opined plaintiff had a "mild to moderate" limitation in the area of understanding and memory and moderate limitations in the areas of social interaction and adaptation. AR 999. The ALJ found Dr. Adkisson's opinion persuasive, noting that it was "consistent with the claimant being capable of

---

[1] Plaintiff summarizes much of the rest of the medical evidence but does not make a substantive argument about the ALJ's evaluation of any opinions or impairments other than those discussed herein. *See* Dkt. 15 at 5–7. The Court will not consider matters that are not "'specifically and distinctly'" argued in the plaintiff's opening brief. *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). The Court thus does not consider the ALJ's evaluation of any opinions other than the challenged opinions identified in substantive arguments made in plaintiff's opening brief.

work limited to simple tasks, while working away from the public, with occasional interaction with co-workers, and occasional workplace changes." AR 31.

Plaintiff contends the ALJ "erred by failing to include in his [RFC] assessment Dr. Adkisson's opinion regarding [plaintiff's] impaired understanding, memory, social interaction, and adaptation." Dkt. 15 at 3.

The ALJ is required to determine the appropriate restrictions in formulating the RFC. *See* 20 C.F.R. § 416.946. The ALJ reasonably did so here. First, the RFC accounted for Dr. Adkisson's opined limitation in understanding and remembering by limiting plaintiff to performing simple tasks. Dr. Adkisson noted, with respect to this limitation, that plaintiff "does display basic comprehension and despite minor errors recent and remote memory present as grossly intact." AR 999. The ALJ reasonably concluded this would allow plaintiff to be able to perform simple tasks.

Second, the RFC adequately accounted for Dr. Adkisson's opined moderate limitation in the area of social interaction by limiting plaintiff to work away from the public with only occasional interaction with co-workers. *See Kitchen v. Kijakazi*, 82 F.4h 732, 740 (9th Cir. 2023) (finding ALJ adequately accounted for opined marked limitation in interacting with others with limitation to work "away from the public" not requiring "close cooperation with co-workers and supervisors"). Finally, the ALJ reasonably found that the RFC's limitation to work involving only occasional workplace changes captured Dr. Adkisson's opined moderate limitation in adaptation.

     B.  Dr. Henegan

Dr. Henegan examined plaintiff and completed an evaluation in June 2021. AR 1002–07. The ALJ found the opinion "partly persuasive" but rejected Dr. Henegan's

opinion that plaintiff could never climb and only occasionally reach. *See* AR 30. These opined limitations were based on Dr. Henegan's assessment of plaintiff's calcific tendinitis and her seizure control. *See* AR 1006–07. The ALJ rejected this portion of the opinion because it was "inconsistent with and not supported by the record including [Dr. Henegan's] own unremarkable examination which shows only giveaway weakness with the right shoulder." *Id.*

The ALJ did not err in considering Dr. Henegan's opinion. First, the ALJ properly found it was unsupported by the examination findings, given the lack of abnormal findings related to plaintiff's right shoulder impairment. *See* 20 C.F.R. § 416.920c(c)(1) (supportability considers "the objective medical evidence . . . presented by a medical source.

Plaintiff contends the ALJ erred by conflating "giveaway weakness" with "giveaway pain," the latter being what Dr. Henegan wrote in his examination record. AR 1005; see, Dkt. 21 at 3. The Ninth Circuit has confirmed "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Contrary to Plaintiff's contention that the ALJ "act[ed] as his own medical expert" in drawing such an inference, Dkt. 21 at 2, there is "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Additionally, the ALJ indicated the opinion was inconsistent with other evidence in the record—as discussed, the ALJ's finding that plaintiff's right shoulder condition was controlled with treatment was not erroneous, and the ALJ implicitly referenced such a finding by indicating the opinion was inconsistent with the record. *See Molina*, 674 F.3d at 1121 ("Even when an agency 'explains its decision with less than ideal clarity,' [the Court] must uphold it 'if the agency's path may reasonably be discerned.'") (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)).

### C. ARNP Dekker

Treating provider ARNP Dekker submitted an opinion in March 2022. AR 1331–35. Based on plaintiff's seizures and epilepsy, she opined plaintiff would be limited to performing low stress work, could stand or walk for two hours in a workday, and could sit for less than two hours in a workday. AR 1332–33. The ALJ discounted this opinion because it was "inconsistent with the treatment notes that show that the claimant is largely seizure free with treatment." AR 30. Plaintiff argues this was erroneous because "the overall evidence shows that [plaintiff] has continued to experience absence seizures." Dkt. 15 at 5. Although, as plaintiff points out, *id.*, some medical evidence confirms plaintiff continued to have a seizure disorder, as discussed, substantial evidence supported the ALJ's finding that plaintiff's seizures occurred only infrequently and were not as limiting as reflected in ARNP Dekker's opinion. *See* AR 301, 309, 318, 320, 972.

### D. Drs. Hurley and Stuart

State agency consultants Drs. Hurley and Stuart completed opinions in June and November 2021, respectively. AR 60–69, 71–78. They both opined plaintiff could

perform light work—lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking for up to six hours per workday. *See id.* They opined plaintiff could frequently reach. *See id.* The ALJ found these opinions persuasive "because they are consistent with the objective medical evidence and [plaintiff's] demonstrated functioning." AR 29.

The ALJ explained the opinions were consistent with mild results on x-rays, unremarkable neurological examinations, and physical examinations showing normal strength and sensation in her extremities. AR 29 (citing AR 302, 310, 746). Plaintiff asserts the opinions "are entitled to little weight" because they are "inconsistent with the overall medical evidence" and other evidence in the record. Dkt. 15 at 7. This is insufficient to establish error. Plaintiff does not identify medical evidence inconsistent with Drs. Hurley and Stuart's opinions, and even if some evidence is inconsistent with their opinions, this would not mean the ALJ's determination that the opinions were consistent with objective medical evidence was not supported by substantial evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### 3. Lay witness evidence

Plaintiff argues the ALJ erred in his assessment of two statements submitted by plaintiff's husband in April 2021. Dkt. 15 at 14; AR 241–50. In those statements, plaintiff's husband indicated she had difficulties with concentration, motivation, and adapting to changes; experiences persistent pain and fatigue; and has difficulties lifting and carrying objects. *See* AR 241–50.

Where an ALJ has provided clear and convincing reasons to discount a claimant's testimony, those are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). In this case, plaintiff's husband's statement suggested no limitations beyond those indicted by statements of the plaintiff, and, therefore, the same reasoning given to discounting plaintiff's testimony applies.

Plaintiff also argues the ALJ erred by failing to discuss the recorded observations of an SSI Facilitator who interviewed plaintiff in connection with her application. *See* Dkt. 15 at 13–14. The ALJ was not required to discuss this statement.

The observations of agency personnel are typically "based upon brief encounters" and intended only "to gather basic information about Plaintiff's condition, not to provide testimony about her functional limitations." *Michelle M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-5499-TLF, 2020 WL 6074460 at *6 (W.D. Wash. Oct. 13, 2020). Such statements are far removed from "lay witness testimony as to a claimant's symptoms or how an impairment affects [her] ability to work". *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted); *cf. Smolen*, 80 F.3d at 1289 ("[T]estimony from lay witnesses who see the claimant every day is of particular value . . . ."); . Nor is such a statement significant and probative—the standard applicable to other evidence, *see Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)—as it was based on only a brief encounter and was not intended to assess the likely limitations Plaintiff might have in a working environment.

4. **RFC and Step Five Assessment**

Plaintiff argues the ALJ erred in his RFC formulation by improperly assessing the medical opinions, subjective testimony, and lay witness statements. Dkt. 15 at 15. Having found the ALJ did not err in these respects, the Court finds the ALJ did not err in formulating the RFC.

Plaintiff also argues the ALJ erred at step five by finding plaintiff capable of performing jobs with Level 2 Reasoning. Dkt. 15 at 16. Plaintiff argues the RFC's limitation of plaintiff to "simple tasks" conflicts with the requirements of jobs with Level 2 Reasoning, *id.*, presenting a conflict between the Dictionary of Occupational Titles (DOT) and the VE's testimony which the ALJ erred by failing to inquire about, *see Lemear v. Berryhill*, 865 F.3d 1201, 1205–06 (9th Cir. 2017) ("[I]f the expert's opinion . . . conflicts with, or seems to conflict with, the requirements in the DOT, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.").

Level 2 Reasoning requires a worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "deal with problems involving a few concrete variables in or from standardized situations." DOT App. C. In *Zavalin*, the Ninth Circuit considered whether Level 3 Reasoning was consistent with a limitation to simple and routine tasks. 778 F.3d 842, 847 (9th Cir. 2015). The Ninth Circuit noted that "Level 2 Reasoning . . . seems at least as consistent with [that limitation] as Level 3 Reasoning, if not more so." *Id.* It found that Level 3 Reasoning was inconsistent with a simple-and-routine-tasks limitation because "it may be difficult for a

person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form' as such instructions can be abstract." *Id.* (quotation omitted).

Level 2 Reasoning contains no requirement that an individual follow abstract, diagrammatic instructions, as Level 3 reasoning does. *See* DOT App. C. While the "involved" instructions required by Level 3 are likely "complicated, intricate" ones, the "uninvolved" instructions required by Level 2 Reasoning are likely to not be so. *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (citing *Webster's Third New Int'l Dictionary* 1191, 2499 (2002)). For that reason, as the Ninth Circuit noted in *Zavalin*, 778 F.3d at 847, Level 2 Reasoning is consistent with a limitation to simple tasks. This conclusion is in accord with unpublished Ninth Circuit cases and the cases of other circuits which have considered the same issue. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1104 n.6 (9th Cir. 2015) (collecting cases). Thus, the ALJ did not err at step five.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ did not improperly determine plaintiff to be not disabled. Therefore, the ALJ's decision is affirmed.

Dated this 21st day of June, 2024.

Theresa L. Fricke
United States Magistrate Judge